1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10

11  HECTOR RAMOS,                            ) Case No. CV 11-4029-SP
                                             )
12              Plaintiff,                    )
                                             )
13       v.                                   ) **MEMORANDUM OPINION AND**
                                             ) **ORDER**
14  MICHAEL J. ASTRUE,                        )
    Commissioner of Social Security          )
15  Administration,                           )
                                             )
16              Defendant.                    )
                                             )
17                                            )

18

19                                    **I.**

20                            **INTRODUCTION**

21          On May 27, 2011, plaintiff Hector Ramos filed a complaint against defendant

22  Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits

23  ("DIB") and Supplemental Security Income ("SSI") benefits.  Both plaintiff and

24  defendant have consented to proceed for all purposes before the assigned Magistrate

25  Judge pursuant to 28 U.S.C. § 636(c).  The parties' briefing is now complete, and

26  the court deems the matter suitable for adjudication without oral argument.

27          Eleven issues are presented for decision here: (1) whether the Administrative

28  Law Judge ("ALJ") properly assessed plaintiff's residual functional capacity; (2)

whether the ALJ properly considered plaintiff's urological disorder in determining plaintiff's residual functional capacity; (3) whether "[t]he ALJ committed reversible error by failing to follow Social Security Ruling 82-62 along with *Groeper v. Sullivan*, 932 [F].2d 1232 (8th Cir. 1991) . . . at Step Four of the Sequential Evaluation Process"; (4) whether the ALJ  properly refused to review and accept the opinion of plaintiff's treating physician; (5) whether the ALJ properly "reject[ed] medical opinion without explanation"; (6) whether the ALJ properly rejected plaintiff's treating physician's opinion that plaintiff was temporarily totally disabled; (7) whether the ALJ properly considered plaintiff's refusal of treatment in his decision; (8) whether the ALJ gave proper weight to the medical reports of plaintiff's treating physician; (9) whether the ALJ properly discounted plaintiff's credibility and subjective complaints based upon plaintiff's treating physician's recommendation of physical exercise; (10) whether the ALJ, at step five, failed to demonstrate that plaintiff has specific transferable skills; and (11) whether the ALJ erred by failing to assess the vocational expert's credibility.[1/]  Pl.'s Mem. at 4-12; Def.'s Mem. at 3-12.

Having carefully studied, inter alia, the parties' written submissions and the Administrative Record ("AR"), the court finds that, as detailed herein, the ALJ provided a complete and proper assessment of plaintiff's residual functional capacity.  In addition, the ALJ properly rejected both plaintiff's subjective complaints and the opinion of plaintiff's treating physician that plaintiff was temporarily totally disabled.  The court further finds that the ALJ properly determined plaintiff cannot perform his past relevant work, and that the ALJ met the

---

[1/]  Because issues four, six, and eight all challenge the ALJ's rejection of plaintiff's treating physician's opinion that plaintiff was temporarily totally disabled, the court will address these issues together.  *See infra* Part IV.D.  The court will also address issues seven and nine together, as they both relate to plaintiff's credibility.  *See infra* Part IV.F.

1   Commissioner's step five burden to demonstrate that plaintiff can perform other

2   jobs in the regional and national economy.  Therefore, the court affirms the

3   Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

6   Plaintiff, who was thirty-nine years old on the date of his June 23, 2010

7   administrative hearing, has a high school education and a certificate in plumbing.

8   *See* AR at 31, 35.  His past relevant work includes employment as a plumber

9   apprentice.  *Id.* at 46, 133-34.

10   On April 22, 2009, plaintiff protectively applied for DIB and SSI, alleging

11   that he has been disabled since October 25, 2002 due to "Back injury, ultrascope

12   surgery, arthritis, urology problem, [and] Psoriasis."  *See* AR at 105-08, 109-15,

13   129, 141.  Plaintiff's applications were denied initially, after which he filed a

14   request for a hearing.  *Id.* at 58, 59, 60-65, 68.

15   On June 23, 2010, plaintiff, represented by counsel, appeared and testified at

16   a hearing before the ALJ.  AR at 30-45, 57.  The ALJ also heard testimony from

17   Rheta Baron King, a vocational expert ("VE").  *Id.* at 46-53; *see also id.* at 101-04.

18   On August 26, 2010, the ALJ denied plaintiff's request for benefits.  *Id.* at 8-20.

19   Applying the well-known five-step sequential evaluation process, the ALJ

20   found, at step one, that plaintiff has not engaged in substantial gainful activity since

21   October 25, 2002, his alleged disability onset date.  AR at 11.

22   At step two, the ALJ found that plaintiff suffers from severe medically

23   determinable impairments consisting of: degenerative disc disease of the

24   lumbosacral and thoracic spines, status-post lumbar microdiscectomy, osteoarthritis

25   of the hands, psoriasis, and overactive bladder syndrome without incontinence.  AR

26   at 11.

27   At step three, the ALJ determined that the evidence does not demonstrate that

28   plaintiff's impairments, either individually or in combination, meet or medically

1    equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix

2    1.  AR at 11.

3         The ALJ then assessed plaintiff's residual functional capacity ("RFC")[2/] and

4    determined that he can perform sedentary work except: he can "occasionally lift

5    and/or carry 20 pounds and frequently lift and/or carry 10 pounds"; "he can

6    occasionally climb, balance, kneel, stoop, crouch, or crawl"; "he can perform gross

7    and fine manipulations frequently"; "he cannot be exposed to extreme temperatures,

8    heights, or dangerous moving machinery"; and he "must be able to change positions

9    from sitting and/or standing every 30 minutes at will while remaining at his

10   workstation."  AR at 12 (emphasis omitted).

11        The ALJ found, at step four, that plaintiff is unable to perform his past

12   relevant work.  AR at 17.

13        At step five, the ALJ determined that "[t]ransferability of job skills is not

14   material to the determination of disability because using the Medical-Vocational

15   Rules as a framework supports a finding that [plaintiff] is 'not disabled,' whether or

16   not [plaintiff] has transferable job skills."  AR at 18 (emphasis omitted).  Because

17   the ALJ determined that plaintiff suffers from exertional and non-exertional

18   limitations, the ALJ enlisted the help of the VE to determine the extent the non-

19   exertional limitations erode the unskilled sedentary occupational base.  *Id.* at 18-19.

20   Based upon plaintiff's vocational factors and RFC, the ALJ found that "there are

21   jobs that exist in significant numbers in the national economy that [plaintiff] can

22   perform."  *Id.* at 18 (emphasis omitted).  The ALJ therefore concluded that plaintiff

23

24   _____

25        [2/]  Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

28   2007) (citation omitted).

1  was not suffering from a disability as defined by the Social Security Act.  *Id.* at 9,
2  19-20.

3       Plaintiff filed a timely request for review of the ALJ's decision, which was
4  denied by the Appeals Council.  AR at 1-3, 4.  The ALJ's decision stands as the
5  final decision of the Commissioner.

6  **III.**

7  **STANDARD OF REVIEW**

8       This court is empowered to review decisions by the Commissioner to deny
9  benefits.  42 U.S.C. § 405(g) (2010).  The findings and decision of the Social
10  Security Administration must be upheld if they are free of legal error and supported
11  by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).
12  But if the court determines that the ALJ's findings are based on legal error or are
13  not supported by substantial evidence in the record, the court may reject the findings
14  and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,
15  1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

16       "Substantial evidence is more than a mere scintilla, but less than a
17  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
18  evidence which a reasonable person might accept as adequate to support a
19  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
20  F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,
21  the reviewing court must review the administrative record as a whole, "weighing
22  both the evidence that supports and the evidence that detracts from the ALJ's
23  conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
24  simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d
25  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
26  evidence can reasonably support either affirming or reversing the ALJ's decision,
27  the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*
28  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**DISCUSSION**

**A.      The ALJ Provided a Complete and Proper Assessment of Plaintiff's**
**Residual Functional Capacity**

Plaintiff argues that "[t]he ALJ erred by improperly weighing the medical evidence of record and deriving an RFC that does not properly take into consideration all of the evidence." Pl.'s Mem. at 4; *see* Reply at 5-7. According to plaintiff, "[t]he ALJ merely dismisse[d] the opinions of Plaintiff's treating physicians and proceed[ed] to derive a completely arbitrary RFC of his own." Pl.'s Mem. at 5. Plaintiff specifically asserts that the ALJ "derive[d] his own arbitrary RFC for light [work]." *Id.* The court disagrees, for the following reasons.

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see* Social Security Ruling ("SSR") 96-5p,[3] 1996 WL 374183, at *5 (July 2, 1996); 20 C.F.R. §§ 404.1545(a)(3) (2012) (a claimant's assessed RFC is based upon all the relevant evidence in the case record), 416.945(a)(3) (2012) (same). Here, contrary to plaintiff's contention, the ALJ did not find plaintiff has the RFC to perform "light" work. *See* Pl.'s Mem. at 5. Instead, as discussed above, the ALJ determined that plaintiff has the RFC to perform sedentary work with the following limitations: occasionally lift and carry no more than twenty pounds; frequently lift and carry no

---

[3]    "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1   more than ten pounds; occasionally climb, balance, kneel, stoop, crouch, or crawl;

2   frequently perform gross and fine manipulations; no exposure to extreme

3   temperatures, heights, or dangerous moving machinery; and plaintiff must be able to

4   change positions from sitting and standing every thirty minutes at will while

5   remaining at his workstation.[4/]  AR at 12.  Having duly reviewed the record and the

6   parties' written submissions, the court finds that the ALJ's RFC finding is supported

7   by substantial evidence.

8        In arriving at the RFC, the ALJ relied on the opinions of treating physician

9   Dr. Robert W. Hunt (orthopaedic surgeon), consultative examining physician Dr.

10  Homayoun Saeid, and consultative non-examining physician Dr. C. Friedman.  *See*

11  AR at 16-17; *compare* AR at 16-17, *with* AR at 216, 631, 637-39.  Dr. Hunt opined

12  that plaintiff "should observe prophylactic work restrictions for the lumbar spine of

13  no heavy work and no weightbearing or sitting for more than 30 minutes at a time

14  without the opportunity to change position for up to 30 minutes according to need."

15  *Id.* at 216.  Contrary to plaintiff's contention that "the ALJ explicitly ignored the

16  opinions of Plaintiff's treating physician, Dr. Timothy Hunt" (Pl.'s Mem. at 6; *see*

17  Reply at 4-5), the ALJ explicitly discussed and gave "great weight" to Dr. Hunt's

18  opinion regarding plaintiff's limitations.[5/]  AR at 17; *see also Lester v. Chater*, 81

19  F.3d 821, 830 (9th Cir. 1996) ("As a general rule, more weight should be given to

20  the opinion of a treating source than to the opinion of doctors who do not treat the

21  _____

22  [4/]   Sedentary work "involves lifting no more than 10 pounds at a time and
    occasionally lifting or carrying articles like docket files, ledgers, and small tools.

23  Although a sedentary job is defined as one which involves sitting, a certain amount

24  of walking and standing is often necessary in carrying out job duties."  20 C.F.R.

25  § 404.1567(a) (2012); 20 C.F.R. § 416.967(a) (2012) (same).  "Jobs are sedentary if
    walking and standing are required occasionally and other sedentary criteria are

26  met."  *Id.*

27  [5/]   Because the record does not contain any documents/findings from "Dr.

28  Timothy Hunt," the court assumes plaintiff is referring to Dr. Robert W. Hunt.

1   claimant." (citation omitted)); 20 C.F.R. §§ 404.1527(c) (2012) (prescribing the

2   respective weight to be given the opinion of treating sources and examining

3   sources), 416.927(c) (2012) (same).

4         The ALJ also afforded "some weight" to Dr. Saied's opinion that plaintiff

5   could perform light work, but the ALJ ultimately found that "the record as a whole

6   supports [a] finding that [plaintiff] has somewhat greater limitations than Dr. Saied

7   found."  AR at 17; *see* AR at 631 (Dr. Saied opined that: plaintiff "can lift or carry

8   20 pounds occasionally and 10 pounds frequently"; plaintiff "can stand or walk for

9   6 hours in an eight-hour day"; and plaintiff "can sit for 6 hours in an eight-hour

10   day."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (examining

11   physician's opinion may constitute substantial evidence if the "nontreating

12   physician relies on independent clinical findings that differ from the findings of the

13   treating physician" (internal quotation marks and citations omitted)).  Lastly, the

14   ALJ gave weight to the opinion of Dr. Friedman, who opined that plaintiff could

15   perform light work with the following limitations: occasionally climb, balance,

16   stoop, kneel, crouch, and crawl; limited handling and fingering; and avoid

17   concentrated exposure to extreme temperatures and hazards.  *See* AR at 17; *see*

18   *also* AR at 637-39; *Andrews v. Shalala*, 53 F.3d 1035, 1041-42 (9th Cir. 1995)

19   (non-examining physician's opinion may constitute substantial evidence only when

20   it is "supported by other evidence in the record and [is] consistent with it").

21         Accordingly, the ALJ's RFC finding properly took into account all of the

22   evidence in the record and is supported by substantial evidence.

23   **B.**    **The ALJ Did Not Fail to Consider Plaintiff's Urological Disorder in**

24         **Determining Plaintiff's RFC**

25         Plaintiff argues that the ALJ failed to consider his urological disorder

26   (frequent urination) in the assessment of his RFC.  Pl.'s Mem. at 7-8.  Plaintiff is

27

28

mistaken.  The ALJ considered all relevant evidence in the record,[6] and found that plaintiff suffers from overactive bladder syndrome without incontinence.  *See* AR at 11.  But the "mere existence" of an impairment is insufficient to prove disability; there must also be "proof of the impairment's disabling severity."  *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir. 1981) (citation omitted).  Plaintiff here cites to no evidence – and the court finds the record is devoid of any evidence  – that any physician opined any functional limitations due to his "urological disorder."  *See generally* Pl.'s Mem. at 4-12; Reply at 4-8.  In fact, the record indicates that medications helped with the symptoms, but plaintiff stopped taking them because he was "tired of medications."  AR at 657.

Accordingly, the ALJ did not commit reversible error in finding no limitations due to plaintiff's urological disorder.

## C.   The ALJ Did Not Err at Step Four

Plaintiff argues that the ALJ failed to make explicit findings regarding the demands of plaintiff's past relevant work in concluding that "Plaintiff could not perform his past relevant work as a plumber apprentice."  Pl.'s Mem. at 9.  Because step four was resolved in plaintiff's favor, it is unclear to the court the basis of plaintiff's challenge.  *See* AR at 17 (ALJ determined at step four that plaintiff is unable to perform his past relevant work).  In any event, the court disagrees with plaintiff, and finds that the ALJ did not err at step four.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as

_____

[6]   *See* AR at 14 (the ALJ stated, "the medications [plaintiff] took for urinary difficulties helped his symptoms but he stopped taking them solely because he became tired of taking the pills" (citing AR at 657)), 15 (the ALJ noted that "[i]n July 2005, [plaintiff] stated that . . . he had frequent urination but no incontinence" (citing AR at 201, 212)), 16 (the ALJ found that "[t]he record contains no evidence of incontinence" (citing AR at 201, 659)).

1  generally performed in the national economy.'" *Carmickle v. Comm'r*, 533 F.3d

2  1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies

3  with the claimant at step four, the ALJ still has a duty to make the requisite factual

4  findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th

5  Cir. 2001) (citations omitted). The ALJ must make specific findings as to: (1) "the

6  claimant's residual functional capacity"; (2) "the physical and mental demands of

7  the past relevant work"; and (3) "the relation of the residual functional capacity to

8  the past work." *Id.* at 845 (citing SSR 82-62). But the ALJ is not required to make

9  "explicit findings at step four regarding a claimant's past relevant work both as

10 generally performed *and* as actually performed." *Pinto*, 249 F.3d at 845.

11      In this case, the ALJ did, in fact, make the requisite factual findings to

12 support his conclusion that plaintiff is unable to perform his past relevant work. As

13 noted above, the ALJ assessed plaintiff's RFC and found plaintiff capable of

14 performing sedentary work with various limitations. *See* AR at 12. The ALJ then –

15 with the help of the VE – made specific findings as to the relation of plaintiff's RFC

16 to the demands of his past relevant work, and determined that plaintiff is unable to

17 perform his past work as a plumber apprentice because it requires exertion at the

18 heavy level. *See id.* at 17, 46-47; *see also Pinto*, 249 F.3d at 844; 20 C.F.R.

19 §§ 404.1560(b)(3) (2012) (if a claimant has the RFC to do his or her prior work, the

20 ALJ will determine that the claimant is not disabled), 416.960(b)(3) (2012) (same).

21      Accordingly, because the ALJ made the requisite specific findings to support

22 his conclusion, no error was committed at step four.

23 **D.**    **The ALJ Properly Rejected Dr. Hunt's Opinion that Plaintiff was**

24         **Temporarily Totally Disabled, While Giving "Great Weight" to Other**

25         **Aspects of Dr. Hunt's Findings**

26      Plaintiff asserts the ALJ erred by refusing to review and accept Dr. Hunt's

27 opinion. Pl.'s Mem. at 9, 10; Reply at 4-5, 8. It is unclear whether plaintiff is

28 contending that the ALJ erred in rejecting Dr. Hunt's opinion in whole or in part. In

1    either case, plaintiff is incorrect.  As discussed above, Dr. Hunt opined – and the

2    ALJ accepted – that plaintiff cannot perform heavy work or weight-bearing, and

3    cannot sit for more than thirty minutes at a time without the ability to change

4    position for up to thirty minutes according to his need.  *See* AR at 16-17; *supra* Part

5    IV.A; *see also* AR at 46-50 (the ALJ incorporated Dr. Hunt's opined limitations in

6    the hypothetical questions to the VE).

7         The ALJ did, however, reject Dr. Hunt's opinion that plaintiff was

8    "temporarily totally disabled."  *See* AR at 16.  Although Dr. Hunt opined on a few

9    occasions that plaintiff was "temporarily totally disabled,"[7/] the ALJ properly

10   afforded this opinion minimal weight because "[t]he determination of disability is

11   an issue reserved to the Commissioner."  *Id.* at 16 (citations omitted); *see Boardman*

12   *v. Astrue*, 286 Fed. App'x 397, 399 (9th Cir. 2008) ("The ALJ is correct that a

13   determination of a claimant's ultimate disability is reserved to the Commissioner,

14   and that a physician's opinion on the matter is not entitled to special significance.");

15   20 C.F.R. §§ 404.1527(d)(1) (2012) ("A statement by a medical source that [a

16   claimant is] 'disabled' or 'unable to work' does not mean that the [Commissioner]

17   will determine that [the claimant is] disabled."), 416.927(d)(1) (2012) (same).

18        Moreover, the ALJ provided specific and legitimate reasons for rejecting Dr.

19   Hunt's opinion that plaintiff was temporarily totally disabled.  First, the ALJ found

20   that this opinion "w[as] made without the benefit of the more complete medical

21   record that was developed at the hearing level."  AR at 16.  This is a specific and

22   legitimate reason for rejecting Dr. Hunt's opinion that plaintiff was temporarily

23   totally disabled.  *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ

24

25        [7/]  *See id.* at 232 (Dr. Hunt opined that plaintiff was temporarily and totally
26   disabled from May 12, 2005 to June 6, 2005), 235 (Dr. Hunt opined that plaintiff
     was temporarily and totally disabled from March 16, 2005 to April 25, 2005), 240
27   (Dr. Hunt opined that plaintiff was temporarily and totally disabled from December
28   6, 2004 to January 5, 2005).

1  may discredit treating physicians' opinions that are conclusory, brief, and

2  unsupported by the record as a whole, or by objective medical findings); *Thomas v.*

3  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("ALJ need not accept the opinion of

4  any physician, including a treating physician, if that opinion is brief, conclusory,

5  and inadequately supported by clinical findings" (citation omitted)); *Burkhart v.*

6  *Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating

7  physician's opinion, which was unsupported by medical findings, personal

8  observations, or test reports).  This opinion is unsupported by the record as whole,

9  including Dr. Hunt's own opinion on June 6, 2005.  *See, e.g.*, AR at 216, 631, 637-

10  39.  On June 6, 2005 – approximately six months after initially finding plaintiff

11  temporarily totally disabled – Dr. Hunt opined that plaintiff was capable of

12  returning to work but was limited to "no heavy work and no weightbearing or sitting

13  for more than 30 minutes at a time without the opportunity to change position for up

14  to 30 minutes according to need."  *Id.* at 216.  Indeed, there are no other treatment

15  records or objective tests that indicate plaintiff was temporarily totally disabled past

16  June 6, 2005.  *See generally id.* at 1-679.

17       Second, the ALJ properly found that these notes failed to establish the

18  requisite twelve-month durational requirement.  *See* 42 U.S.C. § 423(d)(1)(A)

19  (2004) (to qualify for benefits under the Social Security Act, a claimant must prove,

20  among other things, that he or she suffers from a medically determinable physical or

21  mental impairment that "can be expected to result in death or which has lasted or

22  can be expected to last for a continuous period of not less than 12 months"); 42

23  U.S.C. § 1382c(a)(3)(A) (2004) (same); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

24  Cir. 1999) (to establish eligibility for disability benefits under the Social Security

25  Act, the claimant must prove, inter alia, that he or she "suffers from a medically

26  determinable physical or mental impairment that can be expected to result in death

27  or that has lasted or can be expected to last for a continuous period of not less than

28  twelve months" (citation omitted)).

1    Accordingly, the ALJ properly rejected Dr. Hunt's opinion that plaintiff was
2    temporarily totally disabled.

3    **E.      The ALJ Properly Discussed Dr. Miller's Observations in the Context of**
4    **Plaintiff's Credibility**

5        Plaintiff contends that the ALJ erred by "disregard[ing] . . . evidence based on
6    his allege[d] theory of limited information," when the ALJ "compared Dr. Miller[']s
7    observation against Dr. Hunt[']s observations and stated the observation was based
8    on limited information." Pl.'s Mem. at 9-10. The court disagrees. Foremost, Dr.
9    Miller's observations were not medical opinions as to plaintiff's limitations, but
10   were merely observations of inconsistencies related to plaintiff's worker's
11   compensation case. Moreover, the ALJ discussed Dr. Miller's observations solely
12   in the context of plaintiff's credibility. AR at 15; *see Thomas*, 278 F.3d at 958-59
13   (when weighing a claimant's credibility, the ALJ may consider inconsistencies
14   between the claimant's testimony and conduct). Specifically, the ALJ found that
15   Dr. Miller "noted a number of inconsistencies" related to plaintiff's worker's
16   compensation case, which undermines plaintiff's credibility. *See* AR at 15. The
17   ALJ further stated, "Even taking into account Dr. Hunt's explication that Dr.
18   Miller's observations were based on limited information, these inconsistencies are
19   troubling." *Id.* As such, the ALJ committed no error.

20   **F.      The ALJ Properly Discounted Plaintiff's Credibility and Subjective**
21   **Complaints**

22       Plaintiff argues that the ALJ failed to properly assess his credibility. *See* Pl.'s
23   Mem. at 10-11. Specifically, plaintiff maintains the ALJ improperly discounted his
24   credibility based upon his refusal of treatment and Dr. Hunt's recommendation of
25   vigorous physical exercise. *Id.*; *see also* AR at 14, 15. The court agrees that the
26   ALJ erred in relying on plaintiff's refusal of treatment to discount his credibility,
27   but the court finds that such error is harmless because the ALJ provided several
28   other clear and convincing reasons for discounting plaintiff's credibility.

13

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation omitted)).

Instead, once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas*, 278 F.3d at 958-59. Here, the ALJ did not find evidence of malingering. *See generally* AR at 18-20. Thus, in rejecting plaintiff's credibility, the ALJ was required to articulate clear and convincing reasons. *See Benton*, 331 F.3d at 1040. Having carefully reviewed the record, the court finds that the ALJ provided several clear and convincing reasons for discounting plaintiff's subjective complaints.

First, the ALJ found that "the record does not support finding that [plaintiff] is disabled." AR at 16; *see also Batson*, 359 F.3d at 1197 ("the lack of objective medical evidence supporting [a claimant's] claims . . . constitute[s] substantial evidence in support of the ALJ's negative credibility determination"); *Thomas*, 278 F.3d at 959 (lack of objective medical evidence supporting descriptions of pain and

14

1   limitations negatively affected the claimant's credibility regarding her inability to

2   work).  Although a lack of objective evidence supporting plaintiff's symptoms

3   cannot be the sole reason for rejecting his testimony, it can be one of several factors

4   used in evaluating the credibility of his subjective complaints.  *See Rollins v.*

5   *Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

6         Second, the ALJ properly discounted plaintiff's subjective complaints as

7   inconsistent with his conservative treatment.  *See* AR at 14.  "[E]vidence of

8   'conservative treatment' is sufficient to discount a claimant's testimony regarding

9   severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)

10  (citation omitted); *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ

11  properly considered, as part of credibility evaluation, claimant's failure to request

12  medical treatment commensurate with the "supposedly excruciating" pain alleged,

13  and the "'minimal, conservative treatment'" (citation omitted)); *Fair v. Bowen*, 885

14  F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between

15  the claimant's allegations of "'persistent and increasingly severe pain'" and the

16  nature and extent of treatment obtained).

17        Here, as noted by the ALJ, the record indicates that: plaintiff had some relief

18  after using a portable Transcutaneous Electrical Nerve Stimulation ("TENS") unit;

19  plaintiff's pain was "partially relieved by rest, a home traction unit, use of ice,

20  medication, and use of the muscle stimulator"; and plaintiff benefitted from

21  occasional use of a back brace and a cane.  *See* AR at 196, 212; *see also* AR at 14.

22  Also, a May 2, 2008 treatment note indicated that plaintiff's psoriasis was "well-

23  controlled with lidex oint[ment on weekdays] and dovonex cream on weekends."

24  *Id.* at 644; *see id.* at 651 (treatment note indicated that plaintiff's psoriasis was

25  "stable on topicals"); *see also id.* at 14.  And, as further noted by the ALJ, "the

26  medications [plaintiff] took for urinary difficulties helped his symptoms but he

27  stopped taking them solely because he became tired of taking the pills."  *Id.* at 14

28  (citing *id.* at 657); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

1   2008) (an ALJ may consider, as a factor in weighing a claimant's credibility, the

2   claimant's unexplained or inadequately explained failure "to follow a prescribed

3   course of treatment"); 20 C.F.R §§ 404.1530(a) (2012) (to be eligible for benefits,

4   the claimant "must follow treatment prescribed by [his or her] physician if this

5   treatment can restore [the claimant's] ability to work"), 416.930(a) (2012) (same),

6   404.1530(b) (2012) (if the claimant does not follow the prescribed treatment

7   without a good reason, he or she will be found not disabled), 416.930(b) (2012)

8   (same).

9   Third, the ALJ properly discounted plaintiff's subjective complaints based

10  upon "wide gaps in treatment." *See* AR at 14; *see also Fair*, 885 F.2d at 603 (a

11  factor an ALJ may consider in weighing a claimant's credibility is the claimant's

12  "unexplained, or inadequately explained, failure to seek treatment"). The bulk of

13  the treatment records are from 2004 to 2006. *See generally* AR at 196-624. The

14  ALJ therefore concluded that plaintiff's sparse treatment after 2006 "is inconsistent

15  [with] someone with a disabling level of pain, as well as access to medical

16  treatment." *Id.* at 14. This is a clear and convincing reason for rejecting plaintiff's

17  credibility.

18  Fourth, the ALJ properly rejected plaintiff's credibility based upon ordinary

19  techniques of trustworthiness determination, such as inconsistent statements

20  regarding plaintiff's pain. *See* AR at 14-15; *see also Thomas*, 278 F.3d at 958-59

21  (when weighing a claimant's credibility, the ALJ may consider inconsistencies

22  between the claimant's testimony); *Tonapetyan*, 242 F.3d at 1148 (ALJ may engage

23  in ordinary techniques of credibility evaluation, such as considering inconsistencies

24  in a claimant's testimony). The ALJ noted that despite alleging – in February 2004

25  – that he had dull, aching, and constant low-back pain that did not radiate or cause

26  numbness or tingling, plaintiff denied having pain and did not even take over-the-

27  counter analgesics in March 2004. AR at 14-15; *see* AR at 206, 461. The ALJ also

28  noted that plaintiff's "own description of his pain levels has not indicated

1   disability"; "[i]n June 2005, after undergoing an arthroscopic surgery, [plaintiff]

2   stated that he had constant pain that was only minimal to slight, he intermittently

3   had slight to moderate pain, and he rarely had more than moderate pain." *Id.* at 15

4   (citing *id.* at 216).

5        Moreover, the ALJ found plaintiff's alleged debilitating back pain

6   inconsistent with Dr. Hunt's recommendation of physical exercise.  AR at 15 (citing

7   AR at 196, 216).  The ALJ stated, "I would not expect a physician to recommend

8   vigorous physical exercise to someone with an extreme back problem." *Id.*

9   Plaintiff contends "[t]he ALJ added personal opinions to a treatment using the

10  words Vigorous Physical Exercise," which is contrary to the actual recommended

11  treatment. Pl.'s Mem. at 11 (emphasis omitted).  Although Dr. Hunt does not use

12  the word "vigorous" to describe the recommended course of treatment, the fact that

13  Dr. Hunt would recommend a gym membership and swimming suggests a lower

14  level of both pain and functional limitation.  *See Thomas*, 278 F.3d at 959 (factor

15  ALJ may consider in weighing a claimant's credibility is the testimony from

16  physicians concerning the nature, severity, and effect of plaintiff's symptoms).

17        Fifth, the ALJ found that "[plaintiff's] work history does not increase his

18  credibility."  AR at 15; *see also Thomas*, 278 F.3d at 959 (a claimant's "extremely

19  poor work history" and "little propensity to work in [his or] her lifetime" may

20  negatively affect the claimant's credibility regarding his or her inability to work

21  (internal quotation marks omitted)).  The ALJ noted that plaintiff earned less than

22  $5,000 a year in seven of the fourteen years between 1988 (when plaintiff was

23  eighteen years old) and his alleged onset dates of October 2002, which "tends to

24  indicate that [plaintiff] was not working full-time even before his alleged onset

25  date." AR at 15; *see also* AR at 116-17.  This too was a proper reason for rejecting

26  plaintiff's credibility.

27        Notwithstanding the aforementioned legitimate credibility findings, the ALJ's

28  other purported reason for his adverse credibility finding – that plaintiff "declined to

1  have an epidural or lumbar spine surgery back in February, April, and November

2  2004" – is not a valid reason for discounting plaintiff's credibility.  *See* AR at 14.

3  "[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the

4  basis for an adverse credibility finding unless one of a 'number of good reasons for

5  not doing so' applies."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  One such

6  good reason is if the claimant failed to obtain treatment due to an inability to afford

7  such treatment.  *Orn*, 495 F.3d at 638; *see Gamble v. Chater*, 68 F.3d 319, 321 (9th

8  Cir. 1995) ("claimant cannot be denied benefits for failing to obtain medical

9  treatment that would ameliorate his condition if he cannot afford that treatment").

10  Also, a claimant's refusal of surgical treatment cannot adversely affect his

11  credibility if the recommended "[s]urgery was previously performed with

12  unsuccessful results."  20 C.F.R. § 404.1530(c) (2012); 20 C.F.R. § 416.930(c)

13  (2012) (same).  Here, plaintiff testified that he did not receive epidural injections

14  because he was denied three times by his insurance company. AR at 38-39; *see* AR

15  at 13-14 (ALJ acknowledged that plaintiff's insurance company denied his claims

16  for epidural injections).  Moreover, plaintiff declined the back surgery because he

17  previously underwent back surgery in May 2003 with unsuccessful results.  *See id.*

18  at 443 (April 19, 2004 Orthopaedic Spine Surgical Consultation note indicated that

19  the May 2003 back surgery provided plaintiff "some relief in regard to his radiating

20  leg pain, [but] unfortunately [plaintiff] continues to have central low back pain, as

21  well as pain in the thoracic area"), 627 (September 8, 2009 Complete Internal

22  Medicine Evaluation note indicated that plaintiff declined surgical treatment for his

23  back because of the outcome of the first operation).  Therefore, the ALJ's reliance

24  on this reason for his adverse credibility finding was improper.

25       Nevertheless, the ALJ's misplaced reliance on plaintiff's failure to seek

26  treatment to discount his credibility was harmless.  *See Batson*, 359 F.3d at 1195-97

27  (ALJ erred in relying on one of several reasons in support of an adverse credibility

28  determination, but such error was harmless because the ALJ's remaining reasons

1  and ultimate credibility determination were adequately supported by substantial

2  evidence in the record).  The ALJ's error does not "negate the validity" of his

3  ultimate credibility finding, and the ALJ's decision remains "legally valid, despite

4  such error."  *See Carmickle*, 533 F.3d at 1162 (internal quotation marks and citation

5  omitted).

6  **G.    The ALJ Did Not Err at Step Five**

7       Plaintiff contends the ALJ erred, at step five, by being "very vague in

8  recommendation of types of jobs from alleged . . . reputable sources" and by failing

9  to specifically identify plaintiff's transferable skills.  Pl.'s Mem. at 11.  The court

10  disagrees.

11       At step five, the burden shifts to the Commissioner to show that the claimant

12  retains the ability to perform other gainful activity.  *Lounsbury v. Barnhart*, 468

13  F.3d 1111, 1114 (9th Cir. 2006).  There are two ways for the ALJ to meet this

14  burden: (a) by the testimony of a VE; or (b) by reference to the Medical-Vocational

15  Guidelines (the "grids"),[8] 20 C.F.R. pt. 404, subpt. P, app. 2.  *Tackett*, 180 F.3d at

16  1100-01 (citations omitted).  "Where a claimant suffers from both exertional and

17  non-exertional, the ALJ must consult the grids first."  *Lounsbury*, 468 F.3d at

18  1115.  But the ALJ may rely on the grids alone "only when the grids accurately and

19  completely describe the claimant's abilities and limitations."  *Tackett*, 180 F.3d at

20  1102 (internal quotation marks and citations omitted).  When a claimant's RFC does

21  not coincide exactly with the "full range" of work in one of the grids' three

22

---

23  [8]    The grids present, in table form, a shorthand method for determining the

24  availability and number of suitable jobs for a claimant.  *Tackett*, 180 F.3d at 1101.
   The grids categorize jobs by three physical exertional levels, consisting of

25  sedentary, light, and medium work.  *Id.*  These exertional levels are further divided

26  by the claimant's age, education, and work experience.  *Id.*  The grids direct a
   finding of disabled or not disabled based on the number of jobs in the national

27  economy in the appropriate exertional category.  *Id.*  A claimant must be able to

28  perform the full range of jobs in an exertional category for the grids to apply.  *Id.*

exertional levels, the ALJ may not rely solely on the grids and must obtain the testimony of a VE. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

When an ALJ finds that a claimant has transferable skills, the acquired work skills must be identified, and the specific occupations that the acquired work skills are transferable must be cited in the ALJ's decision. SSR 82-41, 1982 WL 31389, at *7. "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." *Id.* at *2. A claimant's acquired skills are transferable to other jobs when the skilled or semiskilled work activities the claimant performed in prior jobs "can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1) (2008); 20 C.F.R. § 416.968(d)(1) (2008) (same); *see* SSR 82-41, 1982 WL 31389, at *2.

Some acquired job skills are "unique to a specific work process in a particular industry or job setting," while others "have universal applicability across industry lines." SSR 82-41, 1982 WL 31389, at *6. A claimant who does not have skills that are transferable to other work is considered unskilled for purposes of the step five determination. *See Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000) (per curiam). "When the [grids] are applicable to a case, transferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work." SSR 82-41, 1982 WL 31389, at *1.

In this case, the ALJ consulted the grids first and determined that "[t]ransferability of job skills is not material to the determination of disability because using the [grids] as a framework supports a finding that [plaintiff] is 'not disabled,' whether or not [plaintiff] has transferable job skills." AR at 18.

1  Particularly, the ALJ determined that if plaintiff had the RFC to perform the full

2  range of sedentary work, a finding of "'not disabled'" would be directed by Rule

3  201.28.[9/]  AR at 18.  "Because the grids are not designed to establish automatically

4  the existence of jobs for persons with both severe exertional and non-exertional

5  impairments, they may not be used to direct a conclusion of *nondisability*."

6  *Lounsbury*, 468 F.3d at 1116 (citation and footnote omitted).  In other words, "if

7  the same person is not disabled under the grids, the non-exertional limitations must

8  be examined separately" with the assistance of a VE.  *See id.*  The ALJ here

9  properly recognized that because plaintiff also suffers from non-exertional

10 limitations, reliance solely on the grids was not permitted and testimony from the

11 VE was required to "determine the extent to which these limitations erode the

12 unskilled sedentary occupational base."  AR at 18-19; *see Widmark*, 454 F.3d at

13 1070; *Lounsbury*, 468 F.3d at 1116; *see also Desrosiers v. Sec'y of Health &*

14 *Human Servs.*, 846 F.2d 573, 576-77 (9th Cir. 1988) (pain, postural limitations, and

15 environmental limitations are examples of non-exertional limitations).

16        During the hearing, the ALJ – with the assistance of the VE – specifically

17 found that although plaintiff "has a number of skills that he acquired in the course

18 of his training," he has no transferable skills.  *See* AR at 52.  Based upon plaintiff's

19 limitations and vocational factors, the VE testified about three alternative

20 occupations at the sedentary exertional level that plaintiff could perform: (1)

21 Cashier II (Dictionary of Occupational Titles ("DOT") No. 211.462-010, 1991 WL

22 671840) with 2,525 local positions and 96,630 national positions; (2) Food and

23 Beverage Order Clerk (DOT No. 209.567-014, 1991 WL 671794) with 100 local

24

25        [9/]    According to Rule 201.28, a person limited to sedentary work as a result of

26 severe medically determinable impairment(s) who is a younger individual (age 18-
   44), who is a high school graduate or more, whose previous work experience is

27 skilled or semiskilled, and whose skills are not transferrable, is presumptively not

28 disabled.  20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.28.

1   positions and 1,925 national positions; and (3) Telephone Quotation Clerk (DOT

2   No. 237.367-046, 1991 WL 672194) with 100 local positions and 3,400 national

3   positions).  AR at 50-51; *see* AR at 19.  Although the Cashier II job is normally

4   performed at a light exertional level, the VE testified that a person with plaintiff's

5   limitations and vocational factors could perform this job because "it is sometimes

6   performed as sedentary work or work with a sit/stand option."  *See* AR at 50.

7   Because the conflict in testimony between the VE and the DOT was adequately

8   resolved, the ALJ properly relied on the VE's testimony that plaintiff could perform

9   the Cashier II job.  *See Massachi*, 486 F.3d at 1153; *Light*, 119 F.3d at 793

10  (evidence sufficient to permit an ALJ to accept a VE's testimony that contradicts the

11  DOT may be either specific findings of fact regarding the claimant's residual

12  functionality, or inferences drawn from the context of the expert's testimony

13  (citations omitted)).

14      Having carefully reviewed the DOT's description of the  requirements of the

15  three alternative jobs, the court finds that – aside from the inconsistency that was

16  adequately explained by the VE regarding the Cashier II job – there are no

17  inconsistences between the DOT and the VE's testimony.  *Compare* AR at 50-51,

18  *with* DOT Nos. 211.462-010, 209.567-014, 237.367-046.  Notably, all three jobs

19  have Specific Vocational Preparation ("SVP") ratings of 2, which require only a

20  "short demonstration up to and including 1 month" to learn.  *See* DOT Nos.

21  211.462-010 (SVP rating is 2), 209.567-014 (same), 237.367-046 (same).  SVP is

22  defined as "the amount of lapsed time required by a typical worker to learn the

23  techniques, acquire the information, and develop the facility needed for average

24  performance in a specific job-worker situation."  DOT, app. C, 1991 WL 688702.

25  Because these jobs require one-month or less of training, they are considered

26  unskilled occupations and thus are consistent with the ALJ's finding that plaintiff

27  has no transferrable skills and is, for the purposes of step five, considered

28  "unskilled."  *See Silveira*, 204 F.3d at 1261; SSR 82-41, 1982 WL 31389, at *2

22

1  ("Unskilled occupations are the least complex types of work. Jobs are unskilled

2  when persons can usually learn to do them in 30 days or less."). The VE's

3  testimony therefore qualifies as substantial evidence to support the ALJ's step five

4  finding that plaintiff retains the ability to perform other gainful activity. *See Jones*

5  *v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) ("To qualify as substantial evidence,

6  the testimony of a vocational expert must be reliable in light of the medical

7  evidence." (citations omitted)).

8      Plaintiff also maintains that he "cannot be denied [benefits] because of

9  opportunities for work that are merely conceivable and not reasonably possible."

10  Pl.'s Mem. at 11. Plaintiff is mistaken. At step five, the ALJ need only show "that

11  the claimant can perform some other work that exists in significant numbers in the

12  national economy." *Lockwood v. Comm'r*, 616 F.3d 1068, 1071 (9th Cir. 2010),

13  *cert. denied*, __ U.S. __, 131 S. Ct. 2882, 179 L. Ed. 2d 1189 (2011). Here, the ALJ

14  demonstrated that plaintiff can perform three jobs (Cashier II, Food and Beverage

15  Order Clerk, and Telephone Quotation Clerk) that exist in significant numbers. *See*

16  *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989)

17  (citing approvingly decisions that have found several hundred jobs "significant");

18  20 C.F.R. §§ 404.1566(b) (2012) ("Work exists in the national economy when there

19  is a significant number of jobs (in one or more occupations) having requirements

20  [that the claimant is] able to meet with [his] physical or mental abilities and

21  vocational qualifications."), 416.966(b) (2012) (same).

22      Accordingly, the ALJ met his burden and properly concluded that plaintiff

23  retains the ability to perform other gainful activity that exists in significant numbers

24  in the national economy.

25  **H.    The ALJ was Not Obligated to Assess the VE's Credibility**

26      Relying on *Singleton v. Schweiker*, 551 F. Supp. 715 (D.C. Pa. 1982),

27  plaintiff contends that because the ALJ failed to assess the credibility of the VE, the

28  VE's testimony "constitutes [an] opinion f[ro]m [an] unreliable source[]." Pl.'s

1   Mem. at 11-12.  But *Singleton* is inapposite to plaintiff's contention.  There, the

2   court simply found that where a claimant suffers solely from non-exertional

3   limitations, the grids are inapplicable and the "testimony from a vocational expert is

4   necessary." *Singleton*, 551 F. Supp. at 723.  Other than *Singleton*, plaintiff does not

5   cite, nor is the court aware of, any authority that would require the ALJ to assess the

6   VE's credibility.  To the extent plaintiff is challenging the admissibility of the VE's

7   testimony under Federal Rule of Evidence 702, "[t]he Federal Rules of Evidence do

8   not apply to the admission of evidence in Social Security administrative

9   proceedings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005)

10  (citations omitted).  Moreover, "[a] VE's recognized expertise provides the

11  necessary foundation for his or her testimony.  Thus, no additional foundation is

12  required." *Id.* at 1218.

13      Accordingly, because plaintiff has identified no legal basis that imposes a

14  duty upon the ALJ to assess the VE's credibility, the court cannot find that the ALJ

15  erred by failing to make such an assessment.

16  **I.**   **Defendant Did Not Fail to Comply with the Court's Case Management**

17      **Order**

18          1.   Defendant Did Not Fail to Engage in a Good Faith Telephonic

19              Settlement Conference

20      On March 7, 2012, plaintiff filed a document entitled "Notice of Non of Non

21  compliance of Mandatory settlement telephone conference" ("Non-Compliance

22  Notice"), contending that defendant failed to comply with the court's Case

23  Management Order by: (1) failing to contact plaintiff within ten calendar days after

24  the filing of the Memorandum in Support of Plaintiff's Complaint; and (2) by failing

25  to engage in a good faith telephonic settlement conference.  *See* Non-Compliance

26  Notice at 1-2.  The court disagrees.

27      First, defendant did not fail to timely engage in the telephonic settlement

28  conference.  Under the court's Case Management Order, defendant was responsible

24

1   for arranging the settlement conference call  "no later than ten (10) calendar days

2   after the filing of the Memorandum in Support of Plaintiff's Complaint."  Case

3   Management Order at 3, May 31, 2011, ECF No. 6.  Plaintiff filed his Memorandum

4   on February 7, 2012; therefore, defendant had until February 17, 2012 to arrange the

5   call.  Because defendant contacted plaintiff on February 17, 2012, the court finds

6   that defendant did not fail to timely initiate the settlement conference call.  *See*

7   Def.'s Mem. at 2 n.1.

8       Second, defendant did not fail to engage in a good faith telephonic settlement

9   conference with plaintiff.  Pursuant to the court's Case Management Order, the

10  court ordered that "counsel should spend as much time as needed attempting to

11  resolve the matter themselves."  Case Management Order at 4, May 31, 2011, ECF

12  No. 6.  Because defendant determined that, in light of an independent review of the

13  underlying merits, "there were no mutually satisfactory settlement options

14  available," defendant was not mandated to proceed further with the settlement

15  conference.  *See* Def.'s Mem. at 2 n.1.

16      Accordingly, defendant did not violate the court's order regarding the

17  mandatory settlement procedures.

18          2.   Defendant Did Not Fail to Oppose the "Motion"

19      Also on March 7, 2012, plaintiff filed a Notice of Non-Opposition ("Non-

20  Opposition Notice"), asserting that "no opposition papers to the Motion have been

21  served [on] Plaintiff."  Non-Opp'n Notice at 1.  But there was no motion pending

22  before this court.  To the extent plaintiff is construing his Memorandum in Support

23  of Plaintiff's Complaint as a "Motion" and contending that defendant failed to

24  oppose it, such contention lacks merit.  The schedule for the preparation and filing

25  of pleadings in this matter is dictated by the court's May 31, 2011 Case

26  Management Order, which states, inter alia, that "[w]ithin thirty (30) days after

27  service of the Memorandum in Support of Plaintiff's Complaint, defendant shall

28  serve and file a document entitled 'Memorandum in Support of Defendant's

1  Answer.'"  Case Management Order at 4, May 31, 2011, ECF No. 6.  Because the

2  Memorandum in Support of Plaintiff's Complaint was filed on February 7, 2012,

3  defendant had until March 8, 2012 to file the Memorandum in Support of

4  Defendant's Answer.  Defendant here timely filed his Memorandum on March 8,

5  2012.

6      Accordingly, defendant properly complied with the court's Case Management

7  Order and did not fail to oppose the "Motion."

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING

the decision of the Commissioner denying benefits, and dismissing this action with

prejudice.

Dated: July 17, 2012

_____

SHERI PYM
UNITED STATES MAGISTRATE JUDGE

26